UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 3 1 2014 ★

BROOKLYN OFFICE

Rec'd
4/3/2014
MLH

------------------------------------------------------------

GARY SMITH,

                              Petitioner,

        v.

WILLIAM LEE, superintendent,
Green Haven Correctional Facility,

                              Respondent.

------------------------------------------------------------

**MEMORANDUM & ORDER**
11-CV-0530 (MKB)

MARGO K. BRODIE, United States District Judge:

Petitioner Gary Smith proceeding *pro se* brings the above-captioned petition pursuant to

28 U.S.C. § 2254, in which he alleges that he is being held in state custody in violation of his

federal constitutional rights. Petitioner's claim arises from a June 3, 2008 judgment of

conviction after a non-jury trial in New York Supreme Court, Suffolk County, for murder in the

second degree and aggravated criminal contempt in the first degree. Petitioner was sentenced to

concurrent prison terms of twenty-five years to life for murder in the second degree, and two and

one-third to seven years for aggravated criminal contempt in the first degree. Petitioner appealed

his conviction to the New York Appellate Division, Second Department, raising two claims:

(1) the People presented insufficient evidence that Petitioner intentionally caused the death of

another and the verdict was against the weight of the evidence; and (2) his sentence was harsh

and excessive. The Appellate Division rejected Petitioner's claims and affirmed his conviction.

*People v. Smith*, 902 N.Y.S.2d 416 (App. Div. 2010). The New York Court of Appeals denied

leave to appeal. *People v. Smith*, 15 N.Y.3d 856 (2010). Petitioner raises both claims in the

instant petition. For the reasons set forth below, the petition is denied.

## I. Background

### a. March 20, 2004 incident

The evidence at trial established that on March 20, 2004, Petitioner was at his residence, a boarding house at 96 Homestead Drive, Coram, New York ("the house"), where he lived with several other residents including Rosalie Abato ("Abato"). (Retrial Tr. 405:9–406:18, 409:16–410:14.)[1] Petitioner and Abato had previously dated each other, but the relationship was abusive and ended. (*Id.* at 406:19–407:11.) Abato's twenty-year-old daughter, Jean Ferdinando, who lived at a different location, was also at the house on March 20, 2004. (*Id.* at 409:1–19.) Ferdinando had previously obtained a protective order against Petitioner ordering Petitioner to "refrain from assault, stalking, harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats, or any criminal offense against" Ferdinando for one year beginning September 25, 2003. (Trial Tr. Jan. 24, 2005 at 70:3–72:20.)

Abato surmised that Petitioner had been drinking on March 20, 2004 based on "his attitude, his comments, [and] his overall outlook." (Retrial Tr. 424:17–27:1, 435:18–21.) Petitioner harassed Ferdinando that day through several incidents. (*Id.* at 409:23–411:7, 416:5–11.) Petitioner put cooking oil in the bath water Ferdinando had prepared for Abato and later turned off the electricity when Ferdinando was showering. (*Id.* at 409:23–411:7.) In the mid-afternoon, Ferdinando left the house to attempt to obtain a ride to her home, but returned to the house at approximately 8:00 p.m. with her friend, Anthony Bryson. (*Id.* at 411:14–22, 413:19–22.) Bryson got into a fight with Petitioner after Petitioner verbally abused Ferdinando and

---

[1] References to "Trial Tr." are from Petitioner's first trial which took place January 24, 2005 through January 28, 2005. The dates are included in each citation because the page numbers for this trial start anew each day of the trial. References to "Retrial Tr." are from Petitioner's retrial on April 29, 2008 through May 6, 2008. References to "Pet'r App. Br." and "Resp't App. Br." are from the appeal of the 2008 decision. The reference to "Pet'r 2005 App. Br." is from the appeal of the 2005 decision.

Abato. (*Id.* at 92:11–93:12) Someone called the police and Officer Albert Black was one of the officers dispatched to respond to the fight.[2] (*Id.* at 122:6–8.) Officer Black spoke with Petitioner after the fight at approximately 8:16 p.m. (*Id.* at 122:9–10, 123:3–9.) Petitioner appeared to be sober during their discussion. (*Id.* at 126:13–19.) Bryson also thought that Petitioner was sober. (*Id.* at 100:2–9.)

Ferdinando left the boarding house after the fight, but returned at approximately 9:45 p.m. in the evening at Abato's request. (*Id.* at 414:13–415:4; Pet'r App. Br. 5.) Petitioner began calling Ferdinando names and Ferdinando told Petitioner she was going to have him arrested. (Retrial Tr. 240:12–24, 415:22–416:11, 417:5–6.) Ferdinando then called the police. (*Id.* at 241:5–10.) Petitioner responded by saying, "If I'm going to jail I'm gonna go for something worth it." (*Id.* at 417:11–12.) Petitioner then walked out of the room toward his bedroom. (*Id.* at 418:19–22.) When Petitioner returned to the room where Ferdinando was still speaking to the police, he said, "Now it's over," and stabbed Ferdinando. (*Id.* at 242:17–19, 244:4–6.) Ferdinando struggled and ran down the hallway, but Petitioner chased her and stabbed her three additional times, once in the chest. (*Id.* at 247:8–9, 371:18–372:19.) Ferdinando was eventually able to get into Abato's room and Abato closed the door. (*Id.* at 420:16–18.) Abato called 911 and Ferdinando told the operator that Petitioner had stabbed her. (Pet'r App. Br. 6–7.) Ferdinando died early the morning of March 21, 2004, at Mather Hospital as a result of being stabbed in the chest. (Resp't App. Br. 9–10.)

After stabbing Ferdinando, Petitioner encountered Officer Black when he left the house and admitted that he had stabbed Ferdinando. (Retrial Tr. 130:11–24.) Petitioner also told Detective John Jacobsen, "I just stabbed that f---ing bitch." (*Id.* at 163:9–10.) During his arrest

---

[2] Thomas Abato stated during his testimony that Petitioner called the police to come to the house after the fight, but then clarified that he did not actually see Petitioner do so. (Retrial Tr. 239:23–240:8.)

and questioning, Petitioner did not appear to be intoxicated to Officer Black, Detectives John Jacobsen, William Peeker, Paul Dodorico or Robert Von Schmid. (*Id.* at 136:19–21, 176:10–15, 194:19–22, 210:20–24, 356:11–14.) Detective Von Schmid did smell alcohol on Petitioner's breath during his questioning of Petitioner which began at approximately 11:57 p.m. (*Id.* at 332:10–12, 336:10–12.)

### b. First trial

Petitioner was charged with intentional murder in the second degree, depraved indifference murder in the second degree and aggravated criminal contempt. (*Id.* at 4:7–7:15.) Petitioner's first trial was tried to a jury. (*See* Trial Tr. Jan. 28, 2005 51:14–53:25.) During the jury trial, the prosecution called two of Ferdinando's relatives who were at the house at 96 Homestead Drive on the day that Ferdinando was stabbed. (Trial Tr. Jan. 25, 2005 P.M. Session 6:11–13, 7:18–21, 22:7–13, 90:2–3, 91:5–8.) Ferdinando's mother, Abato, testified about the incidents that occurred at the house that day and also testified that she saw Petitioner drinking that day. (*Id.* at 22:7–25:23, 38:13–16.) Abato additionally testified that she overheard Ferdinando's 911 call to the police to inform them that Petitioner was stabbing her, and that she observed Ferdinando bleeding when she re-entered Abato's room. (*Id.* at 42:12–46:2.) Ferdinando's uncle, Thomas Abato, testified that he saw Petitioner attack Ferdinando and make a stabbing motion, but did not see any knife. (*Id.* at 107:21–112:19, 129:25–130:3.) Levie Rose, who also lived at 96 Homestead Drive, testified to hearing Petitioner repeat, "I stabbed her" as Petitioner was walking down the driveway away from the house. (Trial Tr. Jan. 26, 2005 7:21–23, 11:25–12:23.) Rose also testified that Petitioner seemed to be "under the influence of some kind of alcohol and in a state of shock" and that he had seen Petitioner drinking that day. (*Id.* at 23:21–24:10, 27:22–28:9.)

4

The prosecution played the police calls and called the 911 emergency operators as witnesses to verify that they had received the calls. (Trial Tr. Jan. 24, 2005 22:13–28:11, 36:4–38:8.) The police officers who responded to the crime scene, the detectives who interviewed Petitioner, and others who helped process and analyze the crime scene also testified. (*See id.* at 73:10–74:25; Trial Tr. Jan. 25, 2005 A.M. Session 5:11–6:21, 11:21–13:10, 16:8–12; Trial Tr. Jan. 26, 2005 44:11–47:2, 50:5–9, 71:14–74:12, 79:13–80:2, 86:11–19, 96:22–98:13, 128:21–131:2, 134:2–24, 142:19–144:25, 146:25–147:2, Trial Tr. Jan. 27, 2005 22:2–23:21.) Officer Black and Detective Jacobsen both testified that, when they responded to the 911 call, Petitioner admitted that he stabbed Ferdinando. (Trial Tr. Jan. 26, 2005 50:12–53:22, 77:2–5.) Detectives Jacobsen, Peeker and Von Schmid all testified that Petitioner did not appear to be intoxicated. (*Id.* at 85:4–17, 109:17–23; Trial Tr. Jan. 27, 2005 37:1–3.) Detective Von Schmid testified that he smelled alcohol on Petitioner's breath. (Trial Tr. Jan. 27, 2005 37:4–5.) Dr. James Wilson performed the autopsy on Ferdinando and testified that Ferdinando died as a result of a stab wound to the chest. (*Id.* at 96:24–97:6.)

Petitioner did not testify or otherwise present any evidence. (*Id.* at 102:8–13.) Defense counsel sought dismissal of all the charges on the grounds that the prosecutor had failed to establish a prima facie case. (*Id.* at 99:21–23.) The trial judge dismissed the depraved indifference murder charge but denied dismissal of the intentional murder and aggravated criminal contempt charges. (*See id.* at 99:21–102:16.) Defense counsel requested that the jury be charged on the law for manslaughter in the first degree and manslaughter in the second degree. (Trial Tr. Jan. 28, 2005 2:7–14.) The court charged the jury with manslaughter in the first degree, but denied the request to charge manslaughter in the second degree as it related to recklessly causing the death of another and the court had previously dismissed the count of

depraved indifference murder. (*Id.* at 2:14–22, 41:19–43:7.) Defense counsel objected to the judge's failure to charge the jury as to how intoxication can negate the element of intent. (*Id.* at 2:25–4:18.) The jury convicted Petitioner of intentional murder in the second degree and aggravated criminal contempt in the first degree. (*Id.* at 52:7–13.) Petitioner was sentenced to concurrent prison terms of twenty-five years to life and two and one-third to seven years, respectively, for the two convictions. (Pet'r App. Br. 8.)

### c.   Appeal of first trial

Petitioner appealed the decision on five grounds: that (1) he was denied a fair trial because the court refused to charge the jury with an intoxication instruction; (2) the trial court erred by refusing to charge the jury with the lesser offense of manslaughter in the second degree; (3) he was denied a fair trial because of the prosecutor's improper remarks during her summation; (4) the prosecutor failed to prove his guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; and (5) the sentence was harsh and excessive. (Pet'r 2005 App. Br. 3.) The Appellate Division found that, "the Supreme Court erred in denying the defendant's request to charge the jury on the defense of intoxication" and reversed the conviction *People v. Smith*, 840 N.Y.S.2d 824, 825 (App. Div. 2007). The Appellate Division determined that "there is sufficient evidence of intoxication in the record for a reasonable person to entertain doubt as to the element of intent" based on the testimony of Abato, Rose and Detective Von Schmid. *Id.* Accordingly, the Appellate Division reversed the convictions and ordered a new trial. *Id.*

### d.   Second trial

Petitioner waived his right to a jury at his retrial. (Waiver of Trial by Jury, *People v. Smith*, No. 768-2004 (N.Y. Sup. Ct. Apr. 19, 2008).) The court denied the request by defense counsel to reconsider the charge for depraved indifference murder in the second degree. (Retrial

6

Tr. 4:7–7:15.) The same witnesses testified during the retrial with minor exceptions.[3] Although

Abato testified at the first trial that she had seen Petitioner drinking during the day on March 20,

2004, (Trial Tr. Jan. 25, 2005 P.M. Session 38:13–16), at the retrial she testified that while she

saw Petitioner drinking on the day in question, she did not see any bottles of alcohol and did not

know if there was alcohol in his cup, (Retrial Tr. 422:24–425–18; *see also* App. Br. 19–21).

However, Abato did testify that she had previously told Detective Walters that Petitioner had

been drinking all day, and that she assumed that he had been drinking because of his attitude,

comments and outlook. (Retrial Tr. 426:24–427:1, 435:18–21.) In addition, Rose, who testified

at the first trial that she saw Petitioner drinking on the day in question and thought that Petitioner

was under the influence of alcohol shortly after the stabbing, did not testify at the retrial. (*See*

Trial Tr. Jan. 26, 2005 7:21–23, 11:25–12:23.) Detective Dodorico, who did not testify at the

first trial, testified that Petitioner did not seem intoxicated at the time Dodorico interviewed

Petitioner at approximately 10:22 p.m on the day in question. (Retrial Tr. 207:11–25, 210:20–

24.) At the close of the case, defense counsel requested that the court consider the charge of

manslaughter in the first degree, New York Penal Law § 125.20(1), requiring intent to cause

serious physical injury. (*Id.* at 439:16–443:8.) Defense counsel also requested that the court

consider the charge of manslaughter in the second degree, New York Penal Law § 125.15(1),

_____

[3] The prosecution presented the testimony of additional witnesses including Brigid
Berninger, Ferdinando's sister, who testified that Ferdinando telephoned her on the afternoon of
March 20, 2004, sounding scared, and asked that Berninger pick her up because Petitioner was
going to kill her, and Detective Dodorico, who testified that Petitioner did not seem intoxicated
when Dodorico interviewed him at approximately 10:22 p.m. (*See* Retrial Tr. 48:15–55:14,
205:14–211:14.) Renada Lewis testified as an employee of Verizon verifying information about
the telephone calls made on the night in question, replacing Dave Egan from the first trial. (*See
id.* at 222:4–229:17; Trial Tr. Jan, 26, 2005 29:19–43:16.) Jennifer Olsen testified at the first
trial regarding the protective order issued to Petitioner but did not testify at the retrial, although
the protective order was admitted as evidence. (*See* Retrial Tr. 36:16–37:18; Trial Tr. Jan. 24,
2005, 65:12–72:20.) Dennis Harrington testified at the first trial about taking a buccal swab
from Petitioner but did not testify at the retrial. (*See* Trial Tr. Jan. 26, 2005 128:23–132:15.)

defined as recklessly causing the death of another, based on New York Penal Law § 15.25 under which intoxication may not be a defense to a criminal charge, but may be considered whenever it is relevant to negate the element of intent. (*Id.*) The trial judge considered both of these lesser offenses. (*Id.*) Upon the conclusion of the retrial, Petitioner was convicted of murder in the second degree and aggravated criminal contempt in the first degree. (Retrial Tr. 499:14–500:10.) Petitioner was sentenced to concurrent prison terms of twenty-five years to life and two and one-third to seven years respectively on June 3, 2008. (Sentencing Tr. 19:1–15.)

### e. Appeal of second trial

Petitioner appealed his June 3, 2008 conviction and sentence raising two claims: (1) that the People failed to prove Petitioner's guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; and (2) that his sentence was harsh and excessive. The Appellate Division rejected Petitioner's claims and affirmed his conviction. *Smith*, 902 N.Y.S.2d at 416. In addressing Petitioner's insufficiency of the evidence claim the Appellate Division held that:

> The defendant's contention that the evidence was legally insufficient to establish his guilt of murder in the second degree is unpreserved for appellate review. In any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt of that crime, including the element of intent, beyond a reasonable doubt.

*Id.* (citations omitted). After reviewing the record pursuant to N.Y. C.P.L. § 470.15(5), the Appellate Division held that, "we are satisfied that the verdict of guilt was not against the weight of the evidence." *Id.* The Appellate Division also found that "the sentence imposed was not excessive." *Id.* The New York Court of Appeals denied leave to appeal. *Smith*, 15 N.Y.3d at 856.

## II. Discussion

### a. Standard of Review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. ---, ---,133 S.Ct. 1088, 1091 (2013); *Lafler v. Cooper*, 566 U.S. ---, ---, 132 S. Ct. 1376, 1390 (2012). For the purposes of federal habeas review, "clearly established law" is defined as the "the holdings, as opposed to dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. In order to establish that a state court decision is an unreasonable application, the state court decision must be "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The decision must be "objectively unreasonable." *Id.* In addition, factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1). As discussed below, Petitioner's claims are procedurally barred and, in any event, have no merit.

### b. Sufficiency of Evidence

Petitioner claims that the People failed to provide sufficient evidence that he acted intentionally, as his intoxication at the time of the crime is inconsistent with an intentional act. (Petition 5.) Respondent argues that Petitioner's claim is procedurally barred, and even if his claim were properly before the Court, Petitioner's guilt was established by overwhelming evidence. (Resp. Mem. Law 7.) Under New York law, in order to properly preserve a challenge to the legal insufficiency of the evidence, "a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged." *People v. Hawkins*, 872 N.Y.S.2d 395, 399 (2008) (quoting *People v. Gray*, 86 N.Y.2d 10, 19 (1995)). Petitioner did not raise a claim of legal insufficiency at trial. (Retrial Tr. 436:16–17.) Petitioner did move for a trial order of dismissal on all counts, but concedes that his legal insufficiency claim was unpreserved by defense counsel's trial order dismissal motion. (*See* Pet'r App. Br. 23.) The Appellate Division found Petitioner's claim unpreserved pursuant to New York's contemporaneous objection rule, N.Y. C.P.L. § 470.05. *Smith*, 902 N.Y.S.2d at 416. The Appellate Division also found that, in any event, Petitioner's claim to be without merit. *Id.*

### i. Procedural Bar

Federal courts are generally not permitted to "review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A state law ground is deemed "adequate" if the rule "is firmly established and regularly followed by the state

in question." *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)).

Petitioner's claim for legal insufficiency of the evidence is procedurally barred because the Appellate Division's decision rested upon an independent and adequate state law ground, namely that Petitioner failed to preserve his claim by raising a contemporaneous objection at trial. It is well settled that New York's contemporaneous objection rule is an adequate and independent bar to federal habeas review. *Kozlowski v. Hulihan*, 511 F. App'x 21, 25 (2d Cir. 2013) ("the contemporaneous objection rule provides an independent state-law ground for barring federal habeas review"); *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) ("we have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule"); *Garcia*, 188 F.3d at 79 ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."); *see also Wright v. Lee*, No. 12-CV-6140, 2013 WL 1668266, at *2 (E.D.N.Y. April 17, 2013) ("It is well settled that New York's contemporaneous objection rule . . . is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review"); *Hutchinson v. Unger*, No. 10-CV-2385, 2012 WL 3027845, at *3 (E.D.N.Y. July 23, 2012) (same); *Williams v. Ercole*, No. 09-CV-0363, 2011 WL 4944268, at *6 (E.D.N.Y. Oct. 12, 2011) (finding adequate and independent state law grounds where the petitioner failed to raise his legal insufficiency claim at trial); *Jones v. Marshall*, No. 08-CV-5793, 2011 WL 9386, at *9 (S.D.N.Y. Jan. 3, 2011) (same). Petitioner admits that he did not preserve his legal insufficiency of the evidence claim. (Pet'r App. Br. 23.) Petitioner's claim is therefore procedurally barred.

The fact that the Appellate Division proceeded to evaluate the merits of Petitioner's legal insufficiency of the evidence claim does not revoke the procedural bar. In addition to

specifically stating that Petitioner's legal insufficiency claim was "unpreserved for appellate review," the Appellate Division held that "[i]n any event" the evidence "was legally sufficient to establish the defendant's guilt of that crime, including the element of intent, beyond a reasonable doubt." *Smith*, 902 N.Y.S.2d at 416 (citations omitted). "[W]hen a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996)); *Edwards v. Rock*, No. 09-CV-1387, 2013 WL 80176, at *10 (E.D.N.Y. Jan. 7, 2013); *Young v. New York*, No. 11-CV-00110, 2012 WL 6644993, at *12 (E.D.N.Y. Dec. 20, 2012) ("When a state court relies on an independent and adequate state law ground — such as, in this case, failure to preserve the issue for appeal — federal habeas review is foreclosed. This is true even if the state court rules in the alternative on the merits of petitioner's claims." (citations omitted)). Accordingly, despite the Appellate Division evaluating the merits of Petitioner's legal insufficiency of the evidence claim, it is nevertheless procedurally barred.

Although a federal court may review a claim that is procedurally barred under certain circumstances, Petitioner has not alleged circumstances justifying such a review. A federal court may review a claim that is procedurally barred by an independent and adequate state ground if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also House v. Bell*, 547 U.S. 518, 536 (2006) ("As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error . . . . The bar is not, however, unqualified . . . . [T]he Court has recognized a miscarriage-

of-justice exception . . . .'" (citations omitted)); *Rush v. Lempke*, 500 F. App'x 12, 15 (2d Cir. 2012) ("When a petitioner 'has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" (quoting *Coleman*, 501 U.S. at 750)). "The cause requirement is met if some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule." *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012); *see also Maples v. Thomas*, 565 U.S. ---, ---, 132 S. Ct. 912, 922 (2012); *Lawson v. McGinnis*, No. 04-CV-2345, 2013 WL 789173, at *9 (E.D.N.Y. Mar. 1, 2013). Prejudice is established when Petitioner is able to show that the alleged errors at trial resulted in "substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Gutierrez*, 702 F.3d at 112 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003); *White v. Rock*, No. 10-CV-5163, 2013 WL 1767784, at *20 (E.D.N.Y. Apr. 22, 2013); *Azaz v. Artus*, No. 09-CV-03857, 2012 WL 5289519, at *6 (E.D.N.Y. Oct. 19, 2012). A fundamental miscarriage of justice arises when Petitioner "is actually innocent of the crime for which he has been convicted." *Cotto v. Herbert*, 331 F.3d 217, 239 n.10 (2d Cir. 2003) (quoting *Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002)); *see also McQuiggin v. Perkins*, 569 U.S. ---, ---, 133 S. Ct. 1924, 1927 (2013) ("[The] fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993))); *Blount v. Napoli*, No. 09-CV-4526, 2012 WL 4755364, at *14 (E.D.N.Y. Oct. 5, 2012).

Petitioner has not argued that there was cause for the procedural default or actual prejudice. Petitioner also has made no claim of actual innocence. To the contrary, Petitioner has admitted that he stabbed Ferdinando. (Retrial Tr. 130:11–24.) Therefore, failure to review Petitioner's claim would not result in a miscarriage of justice. The Court is procedurally barred from reviewing Petitioner's legal insufficiency claim.

### ii. Merits

Even if Petitioner's claim were not procedurally barred from review, his legal insufficiency claim would nevertheless be rejected because it is without merit. Petitioner claims that the evidence is insufficient to support a finding of intent because he was intoxicated when he caused the death of Ferdinando. (Petition 5.) In reviewing an insufficiency of the evidence claim the Court must consider whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cavazos v. Smith*, 565 U.S. ---, ---, 132 S. Ct. 2, 6 (2011) (per curiam) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Mi Sun Cho*, 713 F.3d 716, 720 (2d Cir. 2013) (per curiam) ("[T]he evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in its favor."). A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." *Mi Sun Cho*, 713 F.3d at 720; *Fama v. Comm'r. of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000). "A habeas petitioner 'is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *McDaniel v. Brown*, 558 U.S. 120, 121 (2010) (citing *Jackson*, 443 U.S. at 324); *Arena v. Kaplan*, No. 11-CV-2722, 2013 WL 3455641, at * 7 (E.D.N.Y. July 8, 2013); *Prince v. Lee*, No. 10-CV-5306, 2011 WL 1533486, at *4 (E.D.N.Y.

Apr. 22, 2011). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos*, 565 U.S. at ---, 132 S. Ct. at 3 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Mendez v. Connelly*, No. 09-CV-234, 2012 WL 1567184, at *1–2 (E.D.N.Y. May 2, 2012). Furthermore, a court reviewing a habeas petition must apply this standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Langston*, 630 F.3d at 314 (quoting *Jackson*, 443 U.S. at 324 n.16); *see also Dixon v. Miller*, 293 F.3d 74, 79 (2d Cir. 2002) ("The state court's interpretation of the proof required must be applied on collateral review to prevent a violation of the Due Process Clause of the Fourteenth Amendment, which guards against convicting a defendant without proof beyond a reasonable doubt on each element of his crime."); *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999) ("A federal court must look to state law to determine the elements of the crime.").

Petitioner was convicted under New York Penal Law §§ 125.25(1) and 215.52. New York Penal Law § 125.25(1) provides that a defendant is guilty of murder in the second degree when "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.25(1). New York Penal Law § 215.52 provides that a defendant is guilty of aggravated criminal contempt when:

> in violation of a duly served order of protection, or such order of which the defendant has actual knowledge because he or she was present in court when such order was issued, or an order of protection issued by a court of competent jurisdiction in another state, territorial or tribal jurisdiction, he or she intentionally or recklessly causes physical injury or serious physical injury to a person for whose protection such order was issued.

N.Y. Penal Law § 215.52. Petitioner argues that, "[t]he People failed to prove that the Appellant intentionally caused the death of another. Moreover, the Appellant[']s intoxication was inconsistent with an intentional act, but rather demonstrated an act of recklessness." (Petition 5.) Respondent argues that the trial court "rationally rejected" the claim that Petitioner was too intoxicated to form the intent to murder Ferdinando. (Resp. Mem. Law 9.) Respondent also argues that Petitioner's conduct shows that he "was in control of his facilities" and thus intended to kill Ferdinando. (*Id.* at 9–10.) The trial judge at Petitioner's retrial considered lesser charges of manslaughter in the first degree, intent to cause serious physical injury, and manslaughter in the second degree, recklessly causing the death of another, but found Petitioner guilty of murder in the second degree, intent to cause the death of another. (Retrial Tr. 439:16–443:8, 499:14–500:10.) When the Appellate Division reviewed Petitioner's claim of legal insufficiency, it held that, "viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt of that crime, including the element of intent, beyond a reasonable doubt." *Smith*, 902 N.Y.S.2d at 416.

### 1. Murder in the Second Degree

Here, the evidence is sufficient to establish that Petitioner intended to murder Ferdinando. Petitioner admitted to stabbing Ferdinando. (Retrial Tr. 130:11–24, 163:9–10, 179:17–19, 335:15–22.) Before stabbing Ferdinando, Petitioner said, "If I'm going to jail I'm gonna go for something worth it." (*Id.* at 417:11–12.) Immediately after saying, "Now it's over," to Ferdinando, Petitioner stabbed her four times including once in the chest causing her death. (*Id.* at 242:15–20, 371:25–372:19, 394:23–395:1.) Petitioner stabbed Ferdinando repeatedly while chasing her down a hallway, until she was able to get into another room and close the door. (*Id.* at 247:8–9, 371:18–372:19, 420:16–18.) During Petitioner's interrogation by Detective Von Schmid on the night of the stabbing, Petitioner told the Detective that stabbings do not happen by

16

accident. (*Id* at 336:14–16.) However, under New York Penal Law § 15.25, evidence of

intoxication can be used to negate the element of intent. N.Y. Penal Law § 15.25. In order to

negate the element of intent, "[w]hile the requisite level of intoxication need not be to the extent

of depriving the accused of all power of volition or of all ability to form an intent, the degree of

intoxication that a defendant must demonstrate is quite high." *Velasquez v. Ercole*, 878 F. Supp.

2d 387, 408 (E.D.N.Y. 2012); *see also Swail v. Hunt*, 742 F. Supp. 2d 352, 366 (W.D.N.Y. 2010)

(same); *Garfield v. Poole*, 421 F. Supp. 2d 608, 612 (W.D.N.Y. 2006) (same).

Based on the evidence in this case, Petitioner's claim that he was intoxicated and unable

to form intent is unavailing. Bryson, Officer Black, Detectives Jacobsen, Peeker, Dodrico and

Von Schmid all testified that Petitioner appeared to be sober when they interacted with Petitioner

the evening of the murder. (Retrial Tr. 100:2–9, 136:19–21, 176:10–15, 194:19–22, 210:20–24,

356:11–14.) Petitioner's conduct and compliance with the instructions of Officer Black and

Detectives Jacobsen, Dodorico and Von Schmid after the stabbing also establish that Petitioner

was in control of his bodily and mental functions. (*Id.* at 132:12–134:13, 136:7–15, 175:5–6,

210:2–14, 340:22–342:3, 347:7–15.) Based on the testimony of those who interacted with

Petitioner the night of the stabbing, a rational jury could have concluded that Petitioner had the

required intent to murder Ferdinando. Abato's testimony that she told Detective Walters that

Petitioner had been drinking on the day of the murder and Detective Von Schmid's testimony

that he smelled alcohol on Petitioner's breath that evening support a conclusion that Petitioner

may have been drinking, but do not establish that he was intoxicated or that he did not have the

intent to murder Ferdinando. (Retrial Tr. 426:24–427:1, 336:10–12.) Moreover, in reviewing

the petition, the Court must assume that all conflicting inferences were resolved in favor of the

prosecution. *Cavazos*, 565 U.S. at ---, 132 S. Ct. at 6 ("[A] reviewing court 'faced with a record

of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (quoting *Jackson*, 443 U.S. at 326)); *Policano v. Herbert*, 507 F.3d 111, 117 (2d Cir. 2007) (same). Viewing the evidence in the light most favorable to the prosecution, the evidence supporting Petitioner's intent to cause the death of Ferdinando is sufficient and his legal insufficiency claim as to this charge is denied.

### 2. Aggravated Criminal Contempt

The evidence supporting Petitioner's conviction of aggravated criminal contempt is overwhelming. Petitioner knew that Ferdinando had obtained an order of protection against him because he signed the order when it was issued. (Trial Tr. Jan. 24, 2005 71:22–72:4.) On the night that Petitioner stabbed Ferdinando, Ferdinando said, "You know, Gary, my order of protection is still good, I'm having you arrested," to which Petitioner responded by saying, "If I'm going to jail I'm gonna go for something worth it." (Retrial Tr. 417:5–12.) Petitioner's legal insufficiency claim as to his aggravated criminal contempt charge is therefore denied.

### c. Weight of the Evidence

Petitioner also seeks relief based on the claim that his conviction was against the weight of the evidence because the People did not prove that he intentionally caused the death of another and because his intoxication is consistent with an act of recklessness rather than an intentional act. Petitioner's claim cannot be reviewed by this Court. It is well settled that a "weight of the evidence" claim is distinct from a "insufficiency of the evidence" claim and is a state claim based on N.Y. C.P.L. § 470.15(5) that is not reviewable in a federal habeas proceeding. *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus, and as a matter of federal constitutional law a

jury's verdict may only be overturned if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt." (citations omitted)); *Williams v. Bradt*, No. 10-CV-2858, 2012 WL 2914892, at *7 n.3 (E.D.N.Y. July 17, 2012) ("'A 'weight of the evidence' claim is based on state law.' The Court cannot consider a purely state law claim on federal habeas review." (citations omitted)); *Echevarria-Perez v. Burge*, 779 F. Supp. 2d 326, 332–33 (W.D.N.Y. 2011) ("[W]eight-of-the-evidence claim is not cognizable on federal habeas review. The 'weight of the evidence' claim asserted here derives from New York Criminal Procedure Law ('c') § 470.15(5) . . . ."); *Taylor v. Poole*, 538 F. Supp. 2d 612, 618–19 (S.D.N.Y. 2008) ("It is well established that 'weight of the evidence' claims are not cognizable on federal habeas review, given the difference between such a challenge and that of a challenge based on the sufficiency of the evidence."); *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("In making a 'weight of the evidence' argument, Petitioner has not asserted a federal claim as required by 28 U.S.C. § 2254(a). Instead, he has raised an error of state law claim, for which habeas review is not available."). Accordingly, this claim is dismissed.

### d. Excessive Sentence

Petitioner claims that his sentence violates the Eighth Amendment because it was harsh and excessive since he was under the influence of drugs and alcohol at the time of the crime and, as a result, did not intentionally commit murder. "[I]t is well settled that 'no federal constitutional issue is presented where the sentence is within the range prescribed by state law.'" *Ross v. Gavin*, 101 F.3d 687 (2d Cir. 1996) (alterations omitted) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam)); *see also United States v. Rose*, 251 F. App'x 708, 710 (2d Cir. 2007) ("Lengthy prison sentences . . . do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the

Sentencing Guidelines or statutorily mandated consecutive terms." (citation omitted)); *Cole v. Rock*, No. 12-CV-6587, 2013 WL 5323733, at *14 (S.D.N.Y. Sept. 20, 2013) ("It is well-settled that '[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." (quoting *White*, 969 F.2d at 1383)); *Parnell v. Lape*, 791 F. Supp. 2d 319, 332 (E.D.N.Y. 2011) ("[I]t is well settled that a prison sentence cannot be found to violate the Eighth Amendment prohibition on cruel and unusual punishment by virtue of its length so long as it falls within the established statutory range covering the crime of conviction." (citing *White*, 969 F.2d at 1383)); *McClary v. Conway*, No. 06-CV-2064, 2010 WL 3928563, at *8 (E.D.N.Y. Oct. 4, 2010) ("[I]t is well settled that a prison sentence cannot be found to violate the Eighth Amendment prohibition on cruel and unusual punishment by virtue of its length so long as it falls within the established statutory range." (citing *White*, 969 F.2d at 1383)), *aff'd*, 492 F. App'x 157 (2d Cir. 2012).

Petitioner was convicted of murder in the second degree, a class A-I felony, New York Penal Law § 125.25(1), and aggravated criminal contempt in the first degree, a class D felony, New York Penal Law § 215.52. (Sentencing Tr. 19:1–15.) He was therefore subject to a maximum term of "life imprisonment" for the class A felony, and a maximum term "fixed by the court, . . . not [to] exceed seven years" for the class D felony. N.Y. Penal Law §§ 70.00(2)(a), (d). Petitioner was sentenced to twenty-five years to life for murder in the second degree to run concurrently with two and one-third to seven years for aggravated criminal contempt in the first degree. (Sentencing Tr. 19:1–15.) Petitioner's sentence did not exceed what was permissible under New York's sentencing scheme and therefore Petitioner's claim fails to present a federal constitutional issue cognizable on habeas review. *See Ross*, 101 F.3d at *1 (holding that a state habeas petitioner who was sentenced within the limits of the state law did not present a federal

constitutional issue) (unpublished); *White*, 969 F.2d at 1383 (same). Petitioner's excessive sentence claim is therefore denied.

## III. Conclusion

For the foregoing reasons, the petition for habeas corpus is denied, and the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253. It is further certified pursuant to 28 U.S.C. § 1915(a) that any appeal would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438 (1962). The Clerk of Court is directed to close this case.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 31, 2014
      Brooklyn, New York